James C. Shah (SBN #260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN #279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Jonathan M. Jagher (*pro hac vice* forthcoming)
Nicholas R. Lange (admitted *pro hac vice*)
**JUSTICE JAGHER LONDON & MILLEN LLC**
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
jjagher@jjlmlaw.com
nlange@jjlmlaw.com

*Counsel for Plaintiffs and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

JEFFREY LAWRENCE SINGER and TINA ARCHER SANTUCCI, individually and on behalf of all others similarly situated,

*Plaintiffs,*

v.

COMSCORE, INC., a Delaware corporation, and FULL CIRCLE STUDIES, INC., a Delaware corporation,

*Defendants.*

Case No.: 2:26-cv-01108-SVW-JDE

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Date: June 22, 2026
Time: 1:30 p.m.
Dept.: Courtroom 10A, 10th Floor

# TABLE OF CONTENTS


INTRODUCTION ....... 1
FACTUAL BACKGROUND ....... 2
ARGUMENT ....... 4
I. PLAINTIFFS HAVE ESTABLISHED ARTICLE III STANDING ....... 4
II. PLAINTIFFS HAVE ADEQUATELY ALLEGED EACH OF THEIR CLAIMS ....... 9
A. Plaintiffs Plausibly Allege a Violation of Section § 631(a). ....... 9
B. Plaintiffs Plausibly Allege a Violation of Cal. Pen Code § 638.51. ....... 12
C. Plaintiffs Plausibly Allege a Violation of Cal. Pen Code § 632. ....... 13
D. Plaintiffs Plausibly Allege Comscore's Violation of the CDAFA. ....... 15
E. Plaintiffs Plausibly Allege Comscore's Violation of the ECPA. ....... 17
F. Plaintiffs Plausibly Allege their Claims for Invasion of Privacy and Intrusion Upon Seclusion. ....... 18
G. Plaintiffs Plausibly Allege Comscore's Violation of the UCL. ....... 22
CONCLUSION ....... 24

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Google LLC*,
737 F. Supp. 3d 869 (N.D. Cal. 2024) ....................23

*Berryman v. Merit Prop. Mgmt., Inc.*,
152 Cal. App. 4th 1544 (2007)....................22

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) ....................14

*Branca v. Ocwen Loan Servicing, LLC*,
2013 WL 12120261 (C.D. Cal. Dec. 27, 2013) ....................22

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................17

*Byars v. Goodyear Tire and Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023)....................11

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................23

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................10

*Camplisson v. Adidas Am., Inc.*,
809 F. Supp. 3d 1095 (S.D. Cal. 2025)....................5

*Casillas v. Six Flags Ent. Corp.*,
2025 WL 3684543 (C.D. Cal. Dec. 15, 2025) ....................4

*Conohan v. Rad Power Bikes Inc.*,
2025 WL 1111246 (C.D. Cal. Apr. 3, 2025)....................13

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ....................12

*D'Antonio v. Cable News Network ,Inc.*,
2026 WL 960032 (S.D.N.Y. Apr. 9, 2026)....................8

*Deivaprakash v. Condé Nast Digital*,
798 F. Supp. 3d 1100 (N.D. Cal. 2025) ....................5, 19

*Dellasala v. Samba TV, Inc.*, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) ....... 9

*Doe v. Call-On Doc Inc.*, 2025 WL 1677632 (S.D. Cal. Jun. 13, 2025) ....... 11

*Doe v. GoodRx Holdings, Inc.*, 2025 WL 205302 (N.D. Cal. July 22, 2025) ....... 14, 23

*Doe v. Microsoft Corp.*, 2023 WL 8780879 (W.D. Wash. Dec. 19, 2023) ....... 24

*Echeverria-Corzan v. Fox Corp.*, 2025 WL 3128194 (N.D. Cal. Nov. 7, 2025) ....... 1

*Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934 (S.D. Cal. 2024) ....... 20

*Fregosa v. Mashable, Inc.*, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ....... 12

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025) ....... 7, 8, 19

*Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957 (N.D. Cal. July 14, 2025) ....... 5, 13 ,21

*Garcia v. Anschutz Entertainment Group, Inc.*, 2026 WL 1278912 (C.D. Cal. May 5, 2026) ....... 6, 13

*Getz v. CVS*, 2:25-cv-04689 (C.D. Cal. 2025) ....... 6, 11, 13, 19

*Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522 (C.D. Cal. Mar. 31, 2026) ....... 13

*Gilligan v. Experian Data Corp.*, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ....... 4

*Greenley v. Kochava*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....... 13, 15

*Harrill v. Emanuel Med. Center*, 2025 WL 1635428 (E.D. Cal. Jun. 9, 2025) ....... 11

*Harris v. iHeartMedia, Inc.*,
2026 WL 247875 (N.D. Cal. Jan. 29, 2026) .......... 8

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 20

*Heiting v. FKA Distrib. Co.*,
2025 WL 1430663 (C.D. Cal. May 15, 2025) .......... 5

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) .......... 7, 18

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. Jul. 1, 2024) .......... 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 6, 18

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 7

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......... 11

*In re Google RTB Consumer Privacy Litig.*,
606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 21

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 23

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
613 F. Supp. 3d 1284 (S.D. Cal. 2020) .......... 23

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 20

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 10

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 11

*Ji v. Naver Corp.*,
2023 WL 6466211 (N.D. Cal. Oct. 3, 2023) .......... 23

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026)....................14

*Karwowski v. Gen Digital, Inc.*,
2025 WL 3002610 (9th Cir. Oct. 27, 2025)....................7

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)....................1, 19, 21

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026)....................*passim*

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011)....................23

*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025)....................7, 14

*Lau v. Gen Digital Inc.*,
2023 WL 10553772 (N.D. Cal. Sept. 13, 2023)....................7, 18

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014)....................4

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025)....................1, 20

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sep. 16, 2024)....................14

*Maghoney v. Dotdash Meredith, Inc.*,
2026 WL 497402 (S.D. Cal. Feb. 23, 2026)....................8

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024)....................17

*Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024)....................15, 16

*McClung v. AddShopper, Inc.*,
2024 WL 189006 (N.D. Cal. Jan. 17, 2024)....................5

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019)....................20

*McGinnis v. Community.com, Inc.*,
2023 U.S. Dist. LEXIS 172304 (C.D. Cal. Sep. 25, 2023)....................................14

*Mirmalek v. Los Angeles Times Commc'ns. LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024)....................................................5

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024)..........................................................5, 13

*Nelson v. Reddit, Inc.*,
2026 WL 445627 (S.D. Cal. Feb. 17, 2026)....................................................13

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016)..........................................................21

*Pioneer Electronics (USA), Inc. v. Superior Court*,
40 Cal.4th 360 (2007)...........................................................................................18

*Prang v. Los Angeles County Assessment Appeals Board*,
15 Cal.5th 1152 (2024)..........................................................................................12

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025).....................................................5

*R.C. v. Walgreen Co.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)..........................................................20

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)..................................................14

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)......................................................1, 6, 20

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. Jan. 8, 2025)..................................................13

*Rodriguez v. Brushfire Records*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025)................................................7, 8

*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009)...............................................................................9

*Rubio v. Capital One Bank*,
613 F.3d 1195 (9th Cir. 2010)..............................................................................22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) .......... 24

*Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) .......... 1

*Semien v. PubMatic Inc.*, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .......... 1, 4, 17, 20

*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 17

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024) .......... 5, 12

*Shah v. MyFitnessPal, Inc.*, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .......... 4

*Smith v. Facebook, Inc.*, 262 F. Supp.3d 943 (N.D. Cal. 2017) .......... 15

*Smith v. Facebook, Inc.*, 745 Fed. Appx. 8 (9th Cir. 2018) .......... 21

*Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002 (N.D. Cal. Aug. 4, 2025) .......... 16

*St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 7, 9, 19

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .......... 9

*Toy v. Life Line Screening of Am. Ltd.*, 2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) .......... 21, 22

*Tsering v. Meta Platforms, Inc.*, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) .......... 4, 16, 17, 20

*Xu v. Reuters News & Media, Inc.*, 2025 WL 3035016 (Super. Ct. Santa Clara Cnty. Oct. 24, 2025) .......... 19

*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 14

**Statutes**

18 U.S.C. § 2511(d) .......... 17
Cal. Bus. & Prof. Code § 17200 .......... 22
Cal. Civ. Code § 1798.140(v)(1)(A) .......... 6
Cal. Pen. Code § 638.50 .......... 12
Cal. Penal Code § 632(c) .......... 13
Cal. Penal Code § 502(a) .......... 15

# INTRODUCTION

This case involves egregious privacy violations perpetrated by Defendants Comscore, Inc. and Full Circle Studies, Inc. (collectively, "Comscore" or "Defendant") on unsuspecting consumers who have no relationship with Comscore. Plaintiffs Jeffrey Lawrence Singer and Tina Archer Santucci's ("Plaintiffs") complaint[1] alleges that scores of website operators deploy Comscore's tracking technologies on their websites, including the Scorecard Tags (the "Tracking Technologies"), enabling Comscore to covertly intercept internet users' website activities in real-time and collect massive amounts of data, including identifying information, addressing information, and the contents of their private communications with websites, all without website users' knowledge or consent. Comscore takes this information and, through unique identifiers, IP addresses, device identifiers, and private browsing information, creates highly detailed profiles of each user, including sensitive communications, and leverages the data for its own monetary gain and targeted advertising.

***Not once does Comscore dispute the surveillance at issue in this case.*** Numerous courts have sustained claims like Plaintiffs' that allege data brokers like Comscore conducted widespread surveillance, profiling, and data selling. *See, e.g., Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857 (N.D. Cal. 2026); *Semien v. PubMatic Inc.*, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026); *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023); *Lewis v. Magnite, Inc.*, 2025 WL 3687546 (C.D. Cal. Dec. 4, 2025); *Echeverria-Corzan v. Fox Corp.*, 2025 WL 3128194, at *1 (N.D. Cal. Nov. 7, 2025). This Court should not reach a different result, despite Comscore's attempts to minimize the scope of the harms alleged and to raise factual disputes.

---

[1] Citations to the complaint shall appear herein as ¶__. The abbreviations in the complaint are adopted herein unless otherwise noted.

## FACTUAL BACKGROUND

Plaintiffs, on behalf of themselves and a proposed class of California residents, contend that Comscore, a data broker, developed and deployed its Tracking Technologies on the source code of many websites, including WebMD and Drugs.com,[2] with which they communicated sensitive medical and health information. ¶¶44, 60-61. Comscore uses the Tracking Technologies to secretly intercept, in real time, users' private communications with websites and other personal information, including, *inter alia*, users': 1) substantive browsing information, including full URLs visited, search terms entered on the websites (such as "HIV" on WebMD's doctor search's page or unique prescription drug codes on Drugs.com), and page content viewed ; 2) IP addresses and inferred geolocation; 3) device information, such as device ID, make, model, OS, browser, and data connection type; and 4) unique, persistent cookie identifiers ("Unique Identifiers"). ¶¶3, 34, 46, 50.

Comscore admits its collection of users' sensitive personal information, including "personal information revealing racial or ethnic origin, religious or philosophical beliefs, union membership, a mental or physical condition or diagnosis, sex life or sexual orientation, or citizenship or citizenship status." ¶35. Plaintiffs' intercepted communications on Drugs.com and WedMD.com were similarly sensitive. For example, Plaintiff Singer used Drugs.com to enter search terms for medication reviews and health information related to a serious medical condition with which he was diagnosed. ¶60. Plaintiff Santucci similarly entered search terms on Drugs.com for medication relating to a medical condition she was diagnosed with and on WebMD related to her complications from a medical procedure she underwent. ¶61. Plaintiff Santucci received targeted advertisements on other websites related to her prior browsing activity on the Websites. *Id*. Plaintiffs never saw or agreed to Comscore's privacy policy and had no idea that, unbeknownst to them, the Tracking Technologies

[2] Plaintiffs refer to WebMD and Drugs.com collectively as the "Websites."

were secretly intercepting their private healthcare communications for Comscore's own commercial benefit. ¶¶57, 60-63.[3]

Unfortunately for Plaintiffs, Comscore's contemporaneous interception of their sensitive healthcare communications is just the beginning of its unlawful surveillance. Comscore pieces together website users' intercepted communications from all websites with the Tracking Technology implemented, together with their IP addresses, device identifiers, and unique identifiers to build detailed digital dossiers on millions of users, including Plaintiffs, which profiles are unique to each user and track what articles they read, what products they view, and even what sensitive medical conditions they research. ¶¶3, 22-43. To do so, Comscore utilizes its unique identifiers, which, unbeknownst to Plaintiffs, are assigned by its cookies, and remain attached to users' browsers, allowing Comscore to recognize the same user across different websites, browsing sessions, and time. ¶27, 32-33. Comscore's inclusion of IP addresses in these consumer profiles is also significant, as the geolocation capability of IP addresses allow companies to target advertisements to users in specific geographic areas with over 95% accuracy. ¶37. Companies can associate different IP addresses with the same Unique Identifier to build highly granular tracking profiles of a user's browsing activity across the internet. ¶40.

Comscore monetizes these unique user profiles by transforming them into audience measurement, targeting insights, and analytics deliverables for its paying customers and its own financial gain. ¶¶54-56. For example, when Comscore provides profiles showing visitors to health websites tend to have certain demographic characteristics or interests, advertisers use that information to target those users with

---

[3] Further, Plaintiffs never saw or agreed to any privacy policies the Websites maintained. ¶¶60-61. As set forth in Plaintiffs' opposition to Comscore's request for judicial notice, filed herewith, this Court should decline to consider these extraneous documents because, *inter alia*, they are irrelevant, Comscore improperly relies on them to contest Plaintiffs' well-pled allegations, and the policies do not describe Comscore's operation of the Tracking Technologies and use of its intercepted data.

relevant advertisements across the web. *Id*. Comscore also confirms that it shares user data with marketing partners for commercial marketing purposes. ¶56. In this way, Comscore identified Plaintiffs and created profiles containing their likes and interests, including based on their sensitive healthcare communications on WebMD and Drugs.com, which it used for its own financial benefit without their knowledge or consent. ¶62.

## ARGUMENT

### I. PLAINTIFFS HAVE ESTABLISHED ARTICLE III STANDING

Comscore's standing challenge is a "facial attack" under Rule 12(b)(1), and the Ninth Circuit holds that the Court should analyze it "as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). In keeping with this, courts in this District and others recognize that Plaintiffs' allegations concerning the alleged collection and identification of user web browsing activity satisfy Article III. *Krzyzek*, 817 F. Supp. 3d at 862-64 (standing established where defendant siphoned browsing activity "across the internet" into unique profiles); *Semien*, 2026 WL 216333, at *4 (standing where defendant "compiled detailed user profiles by tracking plaintiffs' interactions across many websites"); *Casillas v. Six Flags Ent. Corp.*, 2025 WL 3684543, at *9 (C.D. Cal. Dec. 15, 2025) (finding standing where plaintiff's "personal content information was tracked and collected, 'including search queries,' 'products searched for,' 'user interests,' and 'browsing habits'"); *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *3 (N.D. Cal. Jan. 27, 2026) (finding standing where third parties "surreptitiously obtained" a wide range of information about the plaintiffs, including their "browsing history, visit history, [and] website interactions"); *Tsering v. Meta Platforms, Inc.*, 2026 WL 89320, at *3 (N.D. Cal. Jan. 12, 2026) (standing established where "Meta was able to monetize [plaintiffs'] data"); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *2 (N.D. Cal.

Jan. 6, 2026) (finding standing where defendant engaged in "unauthorized widespread tracking and data collection"); *Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1107, n.4 (N.D. Cal. 2025) (holding that building profiles of personal information and interfering with the plaintiffs' "ability to remain anonymous" satisfies Article III); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025) (standing met where "[t]rackers on [d]efendant's website . . . collected a broad set of [the plaintiffs'] personal identifying and addressing information"); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) (standing found where the plaintiff alleged that the defendant "deprived him control of personal information regarding his digital activity"); *McClung v. AddShopper, Inc*., 2024 WL 189006, at *1 (N.D. Cal. Jan. 17, 2024) ("Misappropriating a person's browsing activity… and using it to barrage that person's devices with unwanted email communications … is the type of intrusion on privacy and seclusion that can be vindicated in the federal courts.").

First, Plaintiffs undeniably have an interest in preventing the uncontrolled dissemination of their personal information. "In determining statutory standing under CIPA, courts have held IP address collection for targeted advertisement, creates a concrete injury-in-fact." *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *3 (N.D. Cal. Mar. 28, 2025) (collecting cases); *see also, e.g., Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024) ("Plaintiffs plausibly allege that the collection of their IP addresses through the Trackers allows the third parties to obtain personally identifying, non-anonymized information") (cleaned up); *Mirmalek v. Los Angeles Times Commc'ns. LLC*, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024) (same). The same is true of device information, other user identifiers, and other browsing activity. *See, e.g., Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077-1078 (C.D. Cal. 2024) (finding statutory standing based on collection of "browser and device data" by third party tracker); *Heiting v. FKA Distrib. Co.*, 2025 WL 1430663, at *2 (C.D.

Cal. May 15, 2025) (same, based on collection of "device and browser information, geographic information, referral tracking, and URL tracking" by third party tracker) (cleaned up); *Garcia v. Anschutz Entertainment Group, Inc.*, 2026 WL 1278912, at *3-4 (C.D. Cal. May 5, 2026) (standing where browsing activity intercepted from sports and live entertainment ticket vendor websites, even though all of intercepted information "may not be considered sensitive"); *Riganian*, 791 F. Supp. 3d at 1087 ("[T]he tracking of individuals' activity across thousands of websites … to generate uniquely identifying profiles on those individuals is sufficient to allege intrusion into privacy."); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 604 n.7 (9th Cir. 2020) ("[I]ndividuals maintain the expectation that entities will not be able to collect such broad swaths of personal information absent consent.").

Indeed, the Ninth Circuit expressly recognizes that CIPA protects individuals against the loss of an "individual's control of information concerning his or her person." *Id*. at 598 (cleaned up). And "[i]dentifiers such as a … unique personal identifier, online identifier, [and] Internet Protocol address" are "personal information" because they "identif[y] … or could reasonably be linked, directly or indirectly, with a particular consumer or household." Cal. Civ. Code § 1798.140(v)(1)(A); *see also* ¶¶29-51 (explaining privacy implications of IP addresses).

Second, Comscore's interception and use of Plaintiffs' private browsing activity is particularly offensive because the intercepted browsing information related to Plaintiffs' sensitive health information. ¶¶60-61 (searches relating to medications, health research, injuries and treatment, and medical procedure complications, each relating to Plaintiffs' own serious medical conditions); *Getz v. CVS*, 2:25-cv-04689, at 7-9 (C.D. Cal. Oct. 24, 2025) (attached as **Exhibit 1** to the accompanying Declaration of Kolin C. Tang) (finding standing because defendant deprived plaintiff "control of his sensitive health information and digital activity" where intercepted browsing activity was research and purchases of over-the-counter healthcare products on CVS'

website); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 863-67 (N.D. Cal. 2025) (similar, where "more sensitive" browsing activity intercepted relating to over-the-counter health products and supplements).

Lastly, this Court should reject Comscore's standing argument because the question of offensiveness is one for the jury, not for the pleadings. "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *Lau v. Gen Digital Inc.*, 2023 WL 10553772, at *6 (N.D. Cal. Sept. 13, 2023), *aff'd sub nom.*; *Karwowski v. Gen Digital, Inc.,* 2025 WL 3002610 (9th Cir. Oct. 27, 2025) (quoting *In re Facebook, Inc., Consumer Priv. User Profile Litig*., 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019)). "Only if the allegations 'show no reasonable expectation of privacy or an insubstantial impact on privacy interests' can the 'question of [a serious or highly offensive] invasion [] be adjudicated as a matter of law.'" *St. Aubin v. Carbon Health Techs., Inc.,* 2024 WL 4369675, at *12 (N.D. Cal. Oct. 1, 2024) (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 40 (1994); *see also L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *20 (N.D. Cal. Oct. 10, 2025) (finding issue of offensiveness for invasion of privacy claim "inappropriate to resolve at the pleadings stage" given interception of "medically-related" data).

To avoid application of this well-settled law to Plaintiffs' allegations, Comscore misconstrues the allegations, raises inapplicable arguments, and completely ignores its creation and use of unique user profiles for its own commercial benefit. Mot. 10-13. First, Comscore cites a laundry list of cases for the proposition that the collection of IP addresses alone cannot give rise to Article III standing (Mot. 11), but none of those cases involve the substantive interception of sensitive communications or combination of anything beyond IP addresses and generic metadata to create unique user profiles for the defendant's own advertising uses. For example, *Rodriguez v. Brushfire Records*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) was limited to the collection of IP

addresses and unique identifiers and involved a consumer browsing a non-sensitive music website. The court likened those facts to a case where "the collection of an IP address" was insufficient to confer standing, and distinguished those facts from *Gabrielli*, 2025 WL 2494368, where, like here, the plaintiff's substantive communications were intercepted from public websites involving healthcare, such as Tums.com, and combined with IP addresses to form comprehensive consumer profiles for advertising. *Rodriguez*, 2025 WL 3692144, at *7; *see also Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *5 (S.D. Cal. Feb. 23, 2026) ("[a]t most, the data was associated with an IP address and other metadata").[4] Courts readily find standing where the interception and use of users' data is not restricted to IP addresses and devices metadata. *Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *1 (N.D. Cal. Jan. 29, 2026) (finding standing where "trackers store unique identifiers on the user's browser, and cause the browser to send identifying information, including the user's IP address and device metadata, to the third parties", and where IP addresses, device metadata, and unique identifiers are used to "build comprehensive user profiles" and "track users 'across the internet'").

Similarly, it makes no difference whether Plaintiffs had accounts on Drugs.com and WebMD because, regardless of whether Comscore or the websites they visited obtained their legal name, Comscore was able to uniquely identify their private browsing activity across multiple devices, including interests, behaviors, and characteristics, by combining, *inter alia*, Plaintiffs' unique identifiers, browsing activity across the internet, including page views and private search terms, IP addresses, and device metadata, such as device identifiers. ¶¶ 27-28, 33, 40. Creation

---

[4] At least one court has recently declined to follow *Maghoney* where, as here, a data broker created unique user profiles consisting of more than merely IP addresses and metadata. *See D'Antonio v. Cable News Network ,Inc.*, 2026 WL 960032, at *5 (S.D.N.Y. Apr. 9, 2026) (data broker used IP addresses, device metadata, and *unique ID values* to create comprehensive, unique user profiles for advertising purposes.)

and use of these unique profiles for advertising purposes establish Article III standing even where no legal name is attached to the profile, because the profile is regardless unique to that individual. *See Krzyzek*, 817 F. Supp. 3d at 864 (rejecting attack on standing where anonymous browsing information was linked to devices rather than individuals, effectively deanonymizing plaintiffs by creating unique user profiles (or "identity graphs") that correlate to users' browsing history); *see also Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *3 (N.D. Cal. Apr. 21, 2026) (finding standing where collected viewing information used to "package individuals into audiences", despite no "real name" identification).

For these reasons, the Court should deny Comscore's challenges to standing.

## II. PLAINTIFFS HAVE ADEQUATELY ALLEGED EACH OF THEIR CLAIMS

The Court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, [a] plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

### A. Plaintiffs Plausibly Allege a Violation of Section § 631(a).

Comscore argues that Plaintiffs failed to allege a violation of the second clause of CIPA § 631(a) because they do not allege Comscore obtained their communications "in transit." However, "[a]t the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured." *St. Aubin*, 2024 WL 4369675, at *6 (citation omitted). "A pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder." *Id.* (citation omitted). Instead, a

plaintiff need merely provide fair notice of how and when he *believes* his interceptions took place. *Id.*; *see also*, *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 841 (N.D. Cal. 2014) ("While Facebook may ultimately produce evidence showing that the messages were actually accessed while in storage, not during transmission, that issue [] would be better addressed as part of a motion for summary judgment with a more developed factual record.").

Plaintiffs allege far more than the belief required. They specifically allege that the Tracking Technologies' transmission of Plaintiffs' communications to Comscore "occur in real time, contemporaneously with users' interactions with websites; i.e., as the webpages load and as users submit searches, click links, or navigate pages. The Scorecard Tag triggers and sends these communications to Comscore while users' communications with the websites are in transit, not after-the-fact." ¶31; *see also*; ¶43 ("As data travels between users' browsers and a website's services, the Scorecard Tag intercepts and reads these transmissions in real-time [...]. Comscore reads or attempts to read these communications by analyzing and interpreting the data streams mid-transmission, automatically identifying and classifying data types and values, extracting personal information, search queries, and behavioral data while the communications are still traveling to their intended destination."); ¶2 ("These Scorecard Tags [...] intercept users' communications in real-time"); ¶¶46, 50 (data transferred "immediately" and "simultaneously"); ¶75 (similar).

Comscore's other argument, that it didn't intercept the "contents" of Plaintiffs' communications, is equally disingenuous. Plaintiffs allege the interception of much more than metadata, including the substantive search terms entered on the Websites, such as "vasectomy," "HIV," specific pill imprints or the name of drugs, and their page views, including the full URL of each page. *See* ¶¶46-47, 50-52. Courts routinely recognize such as contents of communications, as Comscore appears to concede. *See* Mot. 15; *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) ("[A] user's

request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication."); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 137 (3d Cir. 2015) ("If an address, phone number, or URL is . . . part of the substantive information conveyed to the recipient, then by definition it is 'content.'").

Comscore's argument that the Court cannot determine whether it intercepted the "contents" of Plaintiffs' communications versus mere record information is nonsensical because Plaintiffs unambiguously describe the terms they searched on the Websites, including "medication reviews and general health information related to a serious medical condition Mr. Singer has been diagnosed with" and searches "relating to a serious injury [Ms. Santucci] sustained and related medication and treatment" and "relating to complications from a medical procedure she underwent." ¶¶60-61. Plaintiffs detail the Comscore Tags' interceptions of those communications, including *each* search term entered on the Websites and URL visited. ¶¶46, 50. As such, which specific medical terms Plaintiffs searched or which specific healthcare URLs they visited are irrelevant—they are necessarily "contents" of Plaintiffs' private communication. *See James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 956 (N.D. Cal. 2023); *Byars v. Goodyear Tire and Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. Feb. 3, 2023); *see also Doe v. Call-On Doc Inc.*, 2025 WL 1677632, at *11 (S.D. Cal. Jun. 13, 2025) (accepting allegations of general "types" of information sought on website and finding "contents" intercepted, without requiring disclosure of the specific symptoms, medications, or surgical history plaintiff conveyed); *Getz*, at 21 (**Ex. 1**) (accepting allegations that plaintiff "used the Website to search for, view, and purchase sexual healthcare products" without requiring disclosure of specific product).[5]

---

[5] *Harrill v. Emanuel Med. Center*, 2025 WL 1635428, at *4, 9-10 (E.D. Cal. Jun. 9, 2025) is distinguishable. There, the plaintiff alleged she used the website to search for

Plaintiffs also alleged they ran their searches "*On* Drugs.com" and "*On* WebMD.com", refuting Comscore's unsupported insinuation that they might have run searches on google instead. Mot. 15; ¶¶60-61.

Because Plaintiffs have plead a claim under the second prong of Section 631(a), the Court should likewise decline to dismiss the Section 631(a) claim under the third prong.

**B. Plaintiffs Plausibly Allege a Violation of Cal. Pen Code § 638.51.**

CIPA defines "pen register" and "trap and trace" devices as devices or processes that "dialing, routing, addressing, or signaling information" relating to "a wire *or electronic communication*, but not the contents of a communication." Cal. Pen. Code § 638.50 (emphasis added). Contrary to Comscore's position, the statute expressly extends protection to internet communications through *both* "wire" and "electronic communications." As such, "the text of a law controls over purported legislative intentions unmoored from any statutory text," and "the Court may not replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys*., 603 U.S. 799, 815 (2024); *Prang v. Los Angeles County Assessment Appeals Board*, 15 Cal.5th 1152, 1180 (2024) ("Where statutory text is unambiguous and provides a clear answer, courts 754 F.Supp.3d at 933 need go no further."). Here, "[t]he statutory text is deliberately expansive, designed to encompass new technologies and apply to conduct like that alleged here." *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *9 (N.D. Cal. Oct. 9, 2025), *motion to certify appeal denied*, 2026 WL 183857 (N.D. Cal. Jan. 23, 2026); *Fandom, Inc.*, 754 F. Supp. 3d at 933 ("The pen register statute is broadly written, and under California law, is to be interpreted broadly to protect privacy and to be applied to new techniques and technologies.").

Comscore's argument to the contrary (Mot. 16-18) relies on several non-

---

information related to actual *or potential* health conditions and offered no description of the types of searches she performed.

precedential opinions in which some state courts improperly interpreted CIPA narrowly. Both courts in this district and the Ninth Circuit have *unanimously* rejected such interpretation. *See. e.g., Krzyzek*, 817 F. Supp. 3d at 879 (rejecting Comscore's argument that "relies on various state court decisions"); *Moody*, 742 F. Supp. 3d at 1076 ("…Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of §§ 638.50 and 638.51."); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 929 (C.D. Cal. Jan. 8, 2025) (same); *Garcia*, 2026 WL 1278912, at *6 (same); *Conohan v. Rad Power Bikes Inc.*, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (same); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (finding software that allowed fingerprinting constituted a "pen register"); *Gabrielli*, 2025 WL 1939957, at *12 (same); *Nelson v. Reddit, Inc.*, 2026 WL 445627, at *3-4 (S.D. Cal. Feb. 17, 2026). This Court should likewise find that the Trackers constitute a "pen register" within the meaning of CIPA.

**C. Plaintiffs Plausibly Allege a Violation of Cal. Pen Code § 632.**

Plaintiffs' healthcare communications relating to their serious medical conditions, their medical treatments, and their medications are confidential under Section 632 because they were "carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto". Cal. Penal Code 632(c). Contrary to what Comscore would have this Court believe, "[a]s of [March 31, 2026], there is no established legal presumption in California law that internet communications are not confidential under section 632." *Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522, at *7 (C.D. Cal. Mar. 31, 2026). Regardless, despite any such presumption, courts recognize expectations of privacy in the online transmission of sensitive information, such as healthcare-related communications. For example, in *Getz*, the plaintiff engaged in confidential communications when he used the CVS website to "research over-the-counter medical products relating to a serious

medical condition affecting [him]." (**Ex. 1** at 23); *see also L.B.*, 2025 WL 2899514, at *18 (finding confidentiality where plaintiffs provided "personal information in search of medical services" even when plaintiffs "may not have been communicating directly with medical care providers."); *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5 (N.D. Cal. Sep. 16, 2024) ("given the nature of the allegations – that M.G. entered information about his mental health concerns and therapist preferences on a website that is a mental healthcare conduit – it was reasonable for M.G. to have an expectation of privacy."); *Doe v. GoodRx Holdings, Inc.*, 2025 WL 205302, at *14 (N.D. Cal. July 22, 2025) ("Plaintiffs' interactions with the GoodRx platform—by seeking discounts on specific prescriptions, seeking treatment or specific conditions, and disclosing symptoms—constitute confidential communications."); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (interception of communications related to prescription history, medical conditions, and insurance information confidential).

Additionally, even absent the transmission of medical information, courts have recognized a reasonable expectation of privacy under Section 632 where intercepted communications were used to create comprehensive consumer profiles for targeted advertising, as Plaintiffs also allege. *See Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *18 (S.D. Cal. Mar. 12, 2026) ("Plaintiff has sufficiently alleged a reasonable expectation that the immense amount of personally identifiable and browsing data allegedly collected by the Tracking Technologies would not be shared with third parties" where tracking technologies collected consumer shopping habits and unique identifiers to create unique profiles used for advertising).

None of Comscore's authority to the contrary is applicable. *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *2 (9th Cir. Jan. 28, 2025) and *McGinnis v. Community.com, Inc.*, 2023 U.S. Dist. LEXIS 172304 (C.D. Cal. Sep. 25, 2023) deal with text messages, which are "by nature recorded and so cannot be 'confidential communications.'" In *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D.

Cal. Oct. 23, 2019), the court merely found there was nothing confidential about "items of clothing on a retail website." *Hubbard v. Google LLC*, 2024 WL 3302066, at *2, 7 (N.D. Cal. Jul. 1, 2024) did not involve a Section 632 claim and did not "involv[e] secret or deceptive data collection" because Google only collected browsing information from its *own* affiliated websites and did not disclose it to third parties. The court in *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953-55 (N.D. Cal. 2017) dismissed the Section 632 claim only because the plaintiffs agreed to a privacy policy that disclosed the practice at issue when they created a Facebook account, unlike Plaintiffs here, who did not create accounts and did not see or agree to any such policies. Plaintiffs' claim under Section 632 should be sustained.

**D. Plaintiffs Plausibly Allege Comscore's Violation of the CDAFA.**

The California Legislature enacted CDAFA with the intent to "expand the degree of protection afforded to individuals … from … unauthorized access to … computer data and computer systems, and declared that "protection of the integrity of all types and forms of … computers, computer systems, and computer data is vital to the protection of the privacy of individuals." Cal. Penal Code § 502(a) (emphasis added). Comscore ignores Plaintiffs' allegations that the installation of the Tracking Technologies on users' computers was unauthorized and without consent. *See, e.g.* ¶¶ 57, 60-61, 63.

Consistent with these allegations of "no permission," which this Court must take as true, courts routinely find that unauthorized installation of tracking technologies give rise to CDAFA claims. *Greenley*, 684 F. Supp. 3d at 1047-49 (sustaining CDAFA claim where the defendant embedded its tracking code into third-party apps, which secretly collected app users' data, finding that such tracking was done "without permission"); *Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 656 (N.D. Cal. 2024) (sustaining CDAFA claim when defendant surreptitiously placed a cookie on the plaintiffs' computers, which caused the computers to redirect the plaintiffs' data to the

defendant). Plaintiffs' allegations, taken as true, that they never knew of or consented to Comscore's surreptitious interception of their sensitive health information for its own commercial benefit preclude Comscore from relying on hypothetical privacy policies that Plaintiffs never saw or agreed to.

Nor can Comscore deny that these allegations establish—or at least support the inference—that it knowingly intercepted their communications without permission because, as noted throughout, Plaintiffs reasonably had an expectation of privacy in their sensitive healthcare communications and could not have known, or agreed to, Comscore's secretive tracking and use of it. In support, Comscore overreads *Tsering*, 2026 WL 89320, at *3-5, which is inapplicable because it was limited to geolocation data and did not involve the substantive interception of sensitive healthcare communications. To find that Comscore believed it had Plaintiffs' consent to intercept their private healthcare communications for its own commercial benefit, despite their expectation of privacy, requires unsupported inferences to be drawn *against* Plaintiffs rather than in their favor. Instead, whether it was Comscore's "intent to secure sensitive tracking information without consent should be tested on an evidentiary basis." *Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d at 657.

Plaintiffs also adequately allege compensatory damages, including by explaining how Comscore was unjustly enriched and profited from the data taken by using Plaintiffs' and Class Members' personally identifying information obtained in violation of CDAFA to maximize advertising revenue, which damages courts have repeatedly upheld. ¶¶3, 19-28, 33, 40, 54-56. As the court in *Smith v. Rack Room Shoes, Inc.*, 2025 WL 2210002, at *3 (N.D. Cal. Aug. 4, 2025) explained with respect to online trackers, "Plaintiffs have a 'stake in the profits garnered' unjustly from their data [… that] 'exists regardless of whether an individual planned to sell his or her data or whether the individual's data is made less valuable.'" (finding unjust profit from the use of the plaintiffs' private personal information constitutes "damage or loss" within

the meaning of CDAFA). Comscore's own authority is in accord. *See Tsering*, 2026 WL 89320, at *5 (defendant's unjust profit from use of personal information can constitute "damage or loss").

**E. Plaintiffs Plausibly Allege Comscore's Violation of the ECPA.**

Generally speaking, the ECPA is not violated if "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(d). An exception to this exception exists, however, where a "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id*. Courts have routinely found this "crime-tort" exception applies where plaintiffs "alleged that [technology companies] intercepted their communications for the purpose of associating their data with preexisting user profiles," that this "association of their data with preexisting user profiles violated state law," *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021), and that the technology companies "benefited from this interception by using the information to sell ads to other third-party advertisers." *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) ("Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts. [ ] Because Defendant's actions are allegedly tortious, the one-party exemption does not apply."); *Krzyzek*, 817 F. Supp. 3d at 869 (same, and rejecting argument ECPA does not apply when the defendant's motivation in making interceptions was "routine commercial behavior" rather than tortious injury to plaintiffs); *Semien*, 2026 WL 216333, at *10 (same).

Plaintiffs have done exactly that by alleging a host of common law and statutory claims that Comscore's conduct necessarily violates. *See* ¶¶19-28 (explaining how Comscore's business model relies on it aggregating and enriching intercepted data to deliver a holistic view of all audience activity to its customers, which are valuable to

advertisers seeking to understand and target specific consumer segments across many district websites); ¶¶29-33, 40 (detailing Comscore's use of Tracking Technologies to read unique identifiers and sensitive browsing data, connecting the user's activity across different websites and over time and building an increasingly detailed profile of their interests, behaviors, and characteristics); *id*. ¶¶ 54-56 (summarizing Comscore's monetization of Plaintiffs' private data). As such, the ECPA's one-party consent provision does not exempt Comscore from liability.

### F. Plaintiffs Plausibly Allege their Claims for Invasion of Privacy and Intrusion Upon Seclusion.

Given the overlap in the constitutional and common law privacy claims, "courts consider the claims together [when both are invoked] and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook Tracking*, 956 F.3d at 601. Plaintiffs meet their pleading burden as to each. Both branches of this inquiry are mixed questions of law and fact. *Pioneer Electronics (USA), Inc. v. Superior Court*, 40 Cal.4th 360, 370 (2007) (citing *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 40 (1994)). Only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *Id*. at 370 (citing *Hill*, 7 Cal.n4th at 40).

As noted with respect to Plaintiffs' CIPA claims, Plaintiffs' allegations easily establish a reasonable expectation of privacy over their private healthcare communications. For the same reasons, Comscore's intentional interception of their private healthcare communications and use of that data to create unique user profiles for targeted advertising and its own commercial benefit, without Plaintiffs' knowledge or consent, is highly offensive. California courts recognize that health-related information and information about the purchase of medical products is particularly sensitive in this context. *See, e.g.*, *Lau*, 2023 WL 10553772, at *5-6 (sustaining

intrusion upon seclusion claim where intercepted communications can disclose, inter alia, "[m]edical conditions or symptoms or illnesses" and can be used to create user profiles, and noting courts should be reluctant to decide such issues at the pleading stage); *St. Aubin*, 2024 WL 4369675, at *13 ("This Court agrees with other courts that have refused to dismiss invasion of privacy claims at the motion to dismiss stage where, as here, a data breach involved medical information, because the disclosure of such information is more likely to constitute an egregious breach of the social norms that is highly offensive.") (citations omitted); *Katz-Lacabe*, 668 F. Supp. 3d at 942 (denying motion to dismiss because allegations of disclosure of "health-related" information went beyond "'routine commercial behavior' of collecting contact information for sending advertisements."). The same is true regardless of whether the websites were "free" or "public". *See, e.g.*, *Getz*, at 4, 23-24 (**Ex. 1**) (reasonable expectation of privacy and highly offensive intrusion where Plaintiff viewed and purchased over-the-counter healthcare products from CVS.com); *Gabrielli*, 815 F. Supp. 3d at 860, 868 (sustaining privacy claims involving interception of communications researching healthcare-related products and supplements, such as those available on tums.com and sensodyne.com).

Moreover, even without information regarding specific medical conditions and treatment (which Plaintiffs have alleged they shared here), Comscore's creation and use of unique identifiers to build comprehensive user profiles for targeted advertising and economic benefit still rises to the level of highly offensive, where consumers do not anticipate that degree of sharing. "[I]t does not matter whether [Plaintiffs] had a reasonable expectation of privacy in the information collected because the privacy violation … it encompasses how th[e] collection allegedly allowed [Defendant] to: (1) build a profile reflecting [Plaintiffs'] personal information; and (2) interfere with [Plaintiffs'] ability to remain anonymous." *Deivaprakash*, 798 F. Supp. 3d at 1106-07; *Xu v. Reuters News & Media, Inc.*, 2025 WL 3035016, at *3 (Super. Ct. Santa Clara

Cnty. Oct. 24, 2025) ("whether Plaintiff has a reasonable expectation of privacy to the collected information does not preclude him from alleging an invasion of privacy injury" because "Plaintiff alleges that the collected information was used to build a profile for users based on their information, interests, and interferences"); *Riganian*, 791 F. Supp. 3d at 1087 (sustaining intrusion upon seclusion claim where intercepted communications were compiled from numerous websites into profiles and sold for advertising purposes); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1035 (N.D. Cal. 2019) (finding that surreptitiously tracking users and gathering data to be used in targeted advertising violated social norms and privacy interests); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) (finding that plaintiffs plausibly alleged that defendant's collection of plaintiffs' video viewing history "amount[ed] to a highly offensive intrusion"); *Lewis*, 2025 WL 3687546, at *8 ("Defendant has effectively deanonymized Plaintiffs and created digital fingerprints for them, all without their consent. [] Those allegations are enough to plausibly plead a reasonable expectation of privacy."); *Krzyek*, 817 F. Supp. 3d at 864-65 (similar, rejecting argument that there is no reasonable expectation of privacy in browsing activity on non-sensitive websites such as Bon Appetit). Nor can Comscore rely on purported privacy policies that Plaintiffs did not see or agree to. *See Semien*, 2026 WL 216333, at *6 (similar, and rejecting argument that Plaintiffs consented because they alleged lack of consent and because complaint did not reference privacy policy).

Comscore's own authority is easily distinguishable as not involving the disclosure of any healthcare-related information. *See, e.g., Tsering*, 2026 WL 89320, at *7 (limited to collection of geolocation information); *R.C. v. Walgreen Co.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (browsing history limited to LinkedIn profile views); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (limited to collection of IP addresses when using Facebook's app or website); *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946-47 (S.D. Cal. 2024) (no "intimate or sensitive"

data collected); *see also Smith v. Facebook, Inc.*, 745 Fed. Appx. 8, 9 (9th Cir. 2018) (merely holding that health information fell within scope of the tracking activity plaintiffs agreed to).

Regardless, it is premature to dismiss Plaintiffs' claims based on a determination of how offensive or serious the privacy intrusion is. "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." When determining whether an invasion is "highly offensive," courts consider "the degree and setting of the intrusion," as well as "the intruder's motives and objectives." Given the factually intensive nature of the inquiry, "[c]ourts are generally hesitant to decide claims of this nature at the pleading stage. Only if the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests" can the "question of [a serious or highly offensive] invasion [ ] be adjudicated as a matter of law." *Gabrielli*, 2025 WL 1939957, at *10 (refusing to find, as a matter of law, that "alleged tracking of […] IP address, browsing history, and user preferences is not highly offensive."); *see also In re Google RTB Consumer Privacy Litig.,* 606 F. Supp. 3d 935, 946 (N.D. Cal. 2022) ("Whether the conduct was highly offensive can rarely be resolved at the pleading stage."); *Katz-Lacabe*, 668 F. Supp. 3d at 943 ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."); *Toy v. Life Line Screening of Am. Ltd*., 2024 WL 1701263, at *3 (N.D. Cal. Mar. 19, 2024) ("whether Life Line's alleged intrusion by disclosing that sensitive information to Facebook and/or Google was highly offensive is an issue not suitable for decision on the pleadings"); *Opperman v. Path, Inc*., 205 F. Supp. 3d 1064, 1080 (N.D. Cal. 2016) (noting that customs and habits are very much in flux, tracking technology is still changing, and "a judge should be cautious before substituting his or her judgment for that of the community").

Here, Comscore's treatment of Plaintiffs' private healthcare communications as

a source of data to be exploited and ad revenue to be generated is highly offensive. Plaintiffs' invasion of privacy claim should be allowed to proceed to a jury.

**G. Plaintiffs Plausibly Allege Comscore's Violation of the UCL.**

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "A business act or practice may violate the UCL if it is either unlawful, unfair, or fraudulent. Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (citations and quotation marks omitted).

To state a claim under the "unlawful" prong, Plaintiffs must establish a violation of another law. *Branca v. Ocwen Loan Servicing, LLC*, 2013 WL 12120261, at *14 (C.D. Cal. Dec. 27, 2013) (citing *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) ("[A] violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.")). Here, because Plaintiffs have adequately pled violations of CDAFA, CIPA, invasion of privacy, and intrusion upon seclusion, Plaintiffs state a claim under the UCL. *Branca*, 2013 WL 12120261, at *14.

Plaintiffs separately state a claim under the "unfair" prong of the UCL. *See, e.g., Toy*, 2024 WL 1701263, at *2 ("As for the unfair prong, [plaintiff] alleges that [defendant]'s intentional use of hidden and undisclosed tracking pixels offended public policy (including the federal and state privacy statutes and state consumer protection statutes, such as CIPA) and constitute immoral unethical, oppressive, and unscrupulous activities that caused substantial injury. The complaint plausibly alleges violations of the unlawful and unfair prongs of the UCL") (internal record citations and quotations omitted). Plaintiffs adequately plead their UCL claim.

Comscore's only argument specific to Plaintiffs' UCL claim— that Plaintiffs lack standing because they have not lost money or property as a result of its unfair competition— ignores Plaintiffs' independent basis for UCL standing and ignores a split in authority as to the monetary value of their data. "There are innumerable ways

in which economic injury from unfair competition may be shown." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011). As relevant here, "[p]rivacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL" and "there are several ways to conceptualize these kinds of injuries as injuries to money or property." *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1024 (N.D. Cal. 2024).

**First**, Plaintiffs' allegations of invasion of privacy give rise to an actionable injury. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1024 ("[p]rivacy harms involving personal data can constitute an injury to money or property sufficient to provide standing under the UCL"); *A.B. v. Google LLC*, 737 F. Supp. 3d 869, 881 (N.D. Cal. 2024) (same). **Second**, by alleging that Plaintiffs and Class Members would not have used the websites on which the Tracking Technologies were installed had they known Comscore was collecting their personally identifying information, Plaintiffs allege benefit of the bargain damages, which Comscore does not address. ¶147; *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F.Supp.3d 1284, 1301 (S.D. Cal. 2020); *Ji v. Naver Corp.*, 2023 WL 6466211, at *9 (N.D. Cal. Oct. 3, 2023). **Third**, Plaintiffs allege that Comscore harmed them and Class Members by taking their property (¶¶54-56, 147 (alleging lost money or property, including access to their private and personal data)) and describing the financial value in their information to Comscore's business. While there is some split in authority, *A.B.*, 737 F. Supp. 3d at 881,, the predominant (and better-reasoned) authority finds that such harms establish standing, *see, e.g.*, *Doe*, 2025 WL 2052302, at *12 (standing met "because [plaintiffs] allege that the [defendants] took their data without compensating them for it and that the data has value to both companies and consumers."); *Calhoun v. Google LLC* 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) ("plaintiffs who suffer[] a loss of their personal information suffer[] economic injury and have [UCL] standing"); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1023–25 (UCL standing from

"diminished value" and being deprived of the "right to exclude" others from one's taken data); *Doe v. Microsoft Corp*., 2023 WL 8780879, at *13 (W.D. Wash. Dec. 19, 2023) (recognizing diminution of value of personal information as harm under UCL).

The Court should sustain Plaintiffs' UCL claims.

## CONCLUSION

For all the above reasons, Plaintiffs respectfully submit that Comscore's motion to dismiss should be denied in full. However, if the Court deems any of the claims inadequately pleaded, Plaintiffs request leave to amend. There has been no prior judicial evaluation of the pleadings and Comscore cannot demonstrate bad faith, dilatory motive, or prejudice. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

Dated: June 1, 2026

Respectfully submitted,

By: */s/ Kolin C. Tang*

James C. Shah (SBN #260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN #279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Los Angeles, CA 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Jonathan M. Jagher (*pro hac vice* forthcoming)
Nicholas R. Lange (admitted *pro hac vice*)
**JUSTICE JAGHER LONDON & MILLEN LLC**
100 Tri-State International, Suite 128
Lincolnshire, IL 60069
Telephone: (224) 632-4500
jjagher@jjlmlaw.com
nlange@jjlmlaw.com

*Counsel for Plaintiffs and the Proposed Class*

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 7,632 words and complies with the limit set by the Court's New Case Order dated February 11, 2026. Dkt. 14, § 3.A.

Dated: June 1, 2026

By: */s/ Kolin C. Tang*
Kolin C. Tang