VENABLE LLP
Jean-Paul P. Cart (SBN 267516)
jpcart@venable.com
Harry Libarle (SBN 346020)
hlibarle@venable.com
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone: 415.653.3750
Facsimile: 415.653.3755

*Attorneys for Defendants,*
*Comscore, Inc. and Full Circle Studies, Inc.*

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JEFFREY LAWRENCE SINGER and TINA ARCHER SANTUCCI, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

COMSCORE, INC., a Delaware corporation, and FULL CIRCLE STUDIES, INC., a Delaware corporation,

Defendants.

Case No. 2:26−cv−01108−SVW−JDE

Hon. Stephen V. Wilson

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Date: June 22, 2026
Time: 1:30 p.m.
Dept.: Courtroom 10A, 10th Floor

Filed Concurrently with Reply in Support of Request for Judicial Notice

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION. 1

II. ARGUMENT. 1

A. Plaintiffs Lack Article III Standing. 1

B. Plaintiffs Fail to State a Claim Under § 631(a). 5

C. Plaintiffs Fail to State a Claim Under § 638.51. 6

D. Plaintiffs Fail to State a Claim Under § 632. 7

E. Plaintiffs Fail to State a Claim Under the CDAFA. 8

F. Plaintiffs Fail to State a Claim Under the ECPA. 9

G. Plaintiffs' Common Law Claims Fail. 9

H. Plaintiffs' UCL Claim Fails. 10

III. CONCLUSION. 11


VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aviles v. LiveRamp, Inc.*,
2025 Cal. Super. LEXIS 776 (Cal. Super. Ct. Jan. 28, 2025) ... 6

*Blaker v. Netscout Systems, Inc.*,
No. 25STCV31283 (Cal. Super. Ct. May 27, 2026) ... 6

*Boulton v. Cmty.Com, Inc.*,
2025 U.S. App. LEXIS 1819 (9th Cir. Jan. 28, 2025) ... 7

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (Cal. 2002) ... 7

*Getz v. CVS*,
2:25-cv-04689 (C.D. Cal. Oct. 24, 2025) ... 3, 4, 11

*Getz v. CVS*,
2:25-cv-04689, ECF No. 79 ... 4, 11

*Gianne v. Accor Mgmt.*,
2026 U.S. Dist. LEXIS 75987 (C.D. Cal. March 31, 2026) ... 7

*Harrill v. Emanuel Med. Ctr.*,
2025 U.S. Dist. LEXIS 109125 (E.D. Cal. June 9, 2025) ... 4, 5

*Hernandez-Silva v. Instructure, Inc.*,
2025 U.S. Dist. LEXIS 153186 (C.D. Cal. August 4, 2025) ... 8

*Hubbard v. Google LLC*,
2024 U.S. Dist. LEXIS 117876 (N.D. Cal. July 1, 2024) ... 7, 10

*Hughes v. Vivint, Inc.*,
2024 U.S. Dist. LEXIS 232423 (C.D. Cal. July 12, 2024) ... 2

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026) ... 3, 9

*Licea v. Hickory Farms LLC*,
2024 Cal. Super. LEXIS 66498 (Cal. Super. Ct. Mar. 13, 2024) ... 6

*McGinnis v. community.com, Inc.*,
2023 U.S. Dist. LEXIS 172304 (C.D. Cal. Sept. 25, 2023) ... 7

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ... 10

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................2, 3, 4, 10

*Revitch v. New Moosejaw, LLC*,
2019 U.S. Dist. LEXIS 186955 (N.D. Cal. October 23, 2019)....................7

*Rodriguez v. Google LLC*,
2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) ....................11

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
2025 U.S. Dist. LEXIS 83660 (C.D. Cal. Feb. 27, 2025)....................9

*Sussman v. Am. Broad. Co.*,
186 F.3d 1200 (9th Cir. 1999) ....................9

*In re USA Today Co., Internet Tracking Litig.*,
2026 U.S. Dist. LEXIS 75000 (N.D. Cal. Apr. 6, 2026) ....................2

**Statutes**

18 U.S.C. § 2511 ....................9

Cal. Bus. & Prof. Code § 17204 ....................10

Cal. Pen. Code § 502....................8

Cal. Pen. Code § 637.2(a) ....................6

VENABLE LLP
101 CALIFORNIA STREET, SUITE 3800
SAN FRANCISCO, CA 94111
415.653.3750

# I. INTRODUCTION.

Plaintiffs' Opposition to Defendants' Motion to Dismiss reflects that they have not been harmed, and rather, that the alleged conduct on which they base their claims consists of common and expected commercial practices that reasonable consumers are aware of, that were disclosed to Plaintiffs, and that Plaintiffs easily could have avoided. Plaintiffs' theory reduces to this: Defendants' Scorecard Tag, voluntarily installed by publishers on websites such as those referenced in the Complaint, collected certain browsing data (*e.g.*, IP addresses, device information, and page views) to generate audience measurement analytics, and thus, Plaintiffs are entitled to significant monetary compensation. Plaintiffs cannot overcome the fundamental defects in their Complaint through rhetoric, excessive citations to distinguishable cases, or by mischaracterizing the nature of Defendants' practices and the admissions (and omissions) of their Complaint.

As demonstrated in Defendants' opening brief, Plaintiffs do not—and cannot—sufficiently allege that Defendants' actions have caused them concrete harm sufficient to establish Article III standing. Several of Plaintiffs' individual causes of action fail for the same reason, as CIPA, the CDAFA, and the UCL all impose similar statutory standing requirements that are not satisfied here. Yet each of Plaintiffs' causes of action fails for other reasons as well, with the root cause of Plaintiffs' failure to adequately plead a claim being that they are seeking to use a range of statutory and common law theories in a context they simply are not compatible with, and to penalize Defendants for engaging in common and widely known commercial practices that reasonable persons know to be ubiquitous on the internet and fundamental to modern electronic commerce.

For the reasons explained herein, the Motion should be granted and Plaintiffs' Complaint and the causes of action asserted therein should be dismissed.

# II. ARGUMENT.

## A. Plaintiffs Lack Article III Standing.

Plaintiffs' standing argument rests on a fundamental conflation: they equate the collection of non-personally-identifiable browsing data with the interception of "sensitive communications." But characterizing publicly available webpage URLs and generic health-topic browsing as "sensitive" does not transform the type of data collection they have pleaded into a concrete injury—particularly where Plaintiffs do not allege that Defendants placed their technology on the websites that Plaintiffs visited and voluntarily provided information to.

*First*, the Ninth Circuit's holding in *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), remains dispositive. *Popa* held that the collection of device metadata and "text inputted by the user on the website"—precisely what is at issue here—does not constitute a concrete injury sufficient for Article III standing because it would not be considered "highly offensive" under common law. 153 F.4th 784, 791. Plaintiffs do not mention or address *Popa*, and instead attempt to sidestep it by arguing that Defendants collected their "substantive communications." (Opp. at 8.) But what they characterize as "substantive communications" are merely: (1) publicly available URLs; and (2) searches related to undisclosed injuries, undisclosed medications, and/or undisclosed medical procedures. (*See* Complaint ¶¶ 60–61.) (They may have conducted searches for sprained ankles, aspirin, and dental fillings, but it is impossible to assess if their searches were so mundane because they have intentionally not pleaded what they allegedly searched.) Because Plaintiffs "do[] not clearly allege what personalized information of [theirs] was actually collected" sufficient to "identify a[] harm to [their] privacy," any alleged privacy invasion is not "highly offensive" under *Popa*. *See Hughes v. Vivint, Inc.*, 2024 U.S. Dist. LEXIS 232423, at *14 (C.D. Cal. July 12, 2024), *adopted*, 2024 U.S. Dist. LEXIS 232422 (C.D. Cal. Aug. 5, 2024); *see In re USA Today Co., Internet Tracking Litig.*, 2026 U.S. Dist. LEXIS 75000, at *6 (N.D. Cal. Apr. 6, 2026). And while Plaintiffs focus heavily on the concept of data from multiple sources being used to create profiles of their behavior, they

specifically allege *only* that Defendants received data about their respective visits to a single website, one time each.

*Second*, Plaintiffs fail to grapple with the fact that the authorities on which they rely are distinguishable. In *Krzyzek v. Openx Techs., Inc.*, the plaintiffs pleaded that the defendant tracked them across multiple specific websites, obtained a "cradle-to-grave profile" of them that included information such as the "sociopolitical views," *and* that the defendant had "deanonymized" the plaintiffs. 817 F.Supp. 3d 857, 864 (N.D. Cal. 2026). *Semien v. Pubmatic Inc.* was issued on the same day as the *Krzyzek* decision, by the same judge, with much of the language being identical. In that case, as in *Krzyzek*, the plaintiffs (represented by the same law firm with strikingly uniform allegations) likewise alleged that the defendant had gathered information from a wide array of websites and had developed a profile containing information about the political views, sexual orientation, and health treatment, all with the ability to deanonymize the data it received. *See* 2026 U.S. Dist. LEXIS 15196 (N.D. Cal. Jan. 27, 2026). *Casillas v. Six Flags Ent. Corp.* was issued just after *Popa*, and does not mention *Popa*, presumably because the issue in that case was statutory—rather than Article III—standing (a question the court answered without providing any analysis). 812 F. Supp. 3d 1016, 1033 (C.D. Cal. 2025). *Shah v. MyFitnessPal, Inc.* involved misrepresentations about how data would be used, which the court found "similar in kind to a harm recognized as actionable at common law," which is plainly not the case here. 2026 U.S. Dist. LEXIS 15193, at *7 (N.D. Cal. Jan. 27, 2026). *Gilligan v. Experian Data Corp.* involved allegations that the defendant collected information on "1% of all web traffic" and tied the information it collected to "email addresses and other personal identifiers." 2026 U.S. Dist. LEXIS 1907, at *5 (N.D. Cal. Jan. 6, 2026).

*Third*, contrary to Plaintiffs' assertions, *Getz v. CVS*, 2:25-cv-04689 (C.D. Cal. Oct. 24, 2025) is not a license to plead "health" and bypass actual scrutiny

under Article III. The controlling authority remains *Popa*, which requires a concrete privacy injury closely related to a traditionally actionable privacy harm. In *Getz*, the court found such an injury only because the plaintiff alleged sensitive sexual-health website activity, product purchases, and targeted advertisements allegedly tied to that specific activity—which reflected that the information had been obtained, tied to them, and shared with advertisers for targeting purposes. *Getz v. CVS*, 2:25-cv-04689, ECF No. 79, minute order granting in part and denying in part motion to dismiss (C.D. Cal. Oct. 24, 2025), at 9. Plaintiffs here plead no comparable facts linking Defendants' alleged receipt of browser-level data to an identified person or to any concrete, highly offensive disclosure. Moreover, Defendants have demonstrated that both of the websites on which Plaintiffs base their claims had privacy policies that expressly disclosed the use of cookies/tags/pixels by those websites. These policies were available to Plaintiffs before they conducted their searches—on browsers that must have been configured to allow the use of such technologies.

*Fourth***,** Plaintiffs' argument that "offensiveness" is a jury question is inherently flawed. (*See* Opp. at 7.) While there are contexts in which a jury is tasked with assessing whether an alleged privacy intrusion was severe enough to impose liability, the existence of Article III standing is not determined by a jury at the very end of a case. Rather, the court has an initial gatekeeping role to ensure the existence of jurisdiction at the *outset* of the case. Again, while Plaintiffs assert that health-related browsing is inherently sensitive, they were browsing *publicly accessible* websites without accounts—not submitting information to a doctor or pharmacy. *Cf. Harrill v. Emanuel Med. Ctr.*, 2025 U.S. Dist. LEXIS 109125, at *13 (E.D. Cal. June 9, 2025) (distinguishing between "browsing for information on health conditions, symptoms, and doctors" and "access[ing] a patient portal, schedul[ing] an appointment, call[ing] a doctor's office, refill[ing] a prescription, view[ing] test results, and review[ing] notes from an appointment"). Browsing a

public webpage about a health topic does not create the same privacy expectation as a medical consultation, and Plaintiffs do not allege that Defendants know who they are or anything specific about them. Plaintiffs have not pleaded a concrete injury and there is ample authority by which this Court can find, as a matter of law, that jurisdiction is lacking.

### B. Plaintiffs Fail to State a Claim Under § 631(a).

Plaintiffs' § 631(a) claim fails for the reasons stated in the Motion, and Plaintiffs' Opposition only reinforces these defects.

Plaintiffs' blanket assertion that the Scorecard Tag intercepted their communications "in real time" is entirely conclusory. The Complaint's own description of the technology is that a publisher installs a JavaScript tag on their website, and when a user's browser loads the page, the tag causes the browser to send a *separate* signal to Defendants' servers. (Compl. at ¶¶ 31, 43–46.) This is not interception of a communication "in transit" between Plaintiffs and the publisher's website—it is a separate publisher-authorized data transmission. The allegations of the Complaint are that the tag creates an independent communication channel; it does not intercept the existing one.

Plaintiffs' attempt to distinguish *Harrill v. Emanuel Med. Ctr.*, 2025 U.S. Dist. LEXIS 109125 (E.D. Cal. June 9, 2025) fails. While Plaintiffs claim they described the "type" of searches, *Harrill* required specificity precisely because general descriptions of browsing topics do not adequately allege that "contents" (as opposed to metadata) were intercepted. *See* 2025 U.S. Dist. LEXIS 109125 at *12 ("[T]he collection and transmission of information from 'unauthenticated webpages (*i.e.*, pages that do not require a user to log in to access the website)' is 'only actionable where the information disclosed either (1) 'demonstrates that the plaintiff's interactions plausibly relate to the provision of healthcare,' or (2) 'connects a particular user to a particular healthcare provider' or otherwise identifies patient status, which is protected health information.'") (quoting

*Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 U.S. Dist. LEXIS 38654 (W.D. Wash. Mar. 4, 2025)). Plaintiffs' generic references to "medication reviews" and "health information" suffer the same deficiency.

**C. Plaintiffs Fail to State a Claim Under § 638.51.**

Plaintiffs' § 638.51 pen register claim stretches the statute beyond recognition. The Opposition cites several federal district court decisions applying the statute broadly, but this argument has a fundamental flaw: it ignores that there are no binding authorities supporting their position and that California state court decisions have repeatedly rejected this expansive interpretation.

California courts have declined to apply § 638.51 to routine internet data collection. *See Blaker v. Netscout Systems, Inc.*, No. 25STCV31283 (Cal. Super. Ct. May 27, 2026) ("[A]pplying the ordinary rules of statutory construction and considering both the structural context of Penal Code section 638.51 and the legislative history, the Court concludes that this statute applies to telephonic communications and not to software on a commercial website.") (attached as Exhibit A to the Declaration of Jean-Paul Cart attached hereto); *Aviles v. LiveRamp, Inc.*, 2025 Cal. Super. LEXIS 776 at *6 (Cal. Super. Ct. Jan. 28, 2025) (rejecting pen register claim because "it is normal for websites to track the IP addresses of their visitors"); *Licea v. Hickory Farms LLC*, 2024 Cal. Super. LEXIS 66498 at *10 (Cal. Super. Ct. Mar. 13, 2024) (same). These decisions correctly recognize that interpreting "pen register" to cover every JavaScript tag that records an IP address would expand the statute far beyond its intended scope—making illegal the basic architecture of the internet.

Moreover, Plaintiffs lack statutory standing under § 638.51 because only persons who have been <u>injured</u> by the installation or use of a pen register have standing to sue. *See* Cal. Pen. Code § 637.2(a). As explained in Section II.A, *supra*, Plaintiffs have failed to allege a legally cognizable injury. This Court should follow the California state courts and dismiss Plaintiffs' pen register claim.

### D. Plaintiffs Fail to State a Claim Under § 632.

Section 632 prohibits eavesdropping on "confidential communications." Plaintiffs' Opposition hinges on the novel proposition that browsing publicly accessible webpages constitutes a "confidential communication." It does not—particularly where, as here, such websites disclose their use of third-party cookies/tags/pixels.

Plaintiffs cite *Gianne v. Accor Mgmt.*, 2026 U.S. Dist. LEXIS 75987 (C.D. Cal. March 31, 2026) for the proposition that there is no "established legal presumption" that internet communications are non-confidential. *See* 2026 U.S. Dist. LEXIS 75987, at *19 (comparing conflicting opinions on this issue). But even assuming *Gianne* is correct that no blanket presumption applies,[1] the court's analysis was context-dependent—and the relevant context here is fatal to Plaintiffs' claim. Plaintiffs were browsing *free, publicly accessible* websites without logging in, creating accounts, reviewing privacy or cookies policies, disabling cookies on their browsers, or providing any personal information. Under these circumstances, no objectively reasonable person would expect their browsing to be "confidential."

The Ninth Circuit's decision in *Boulton v. Cmty.Com* confirms this result. Plaintiffs attempt to distinguish *Boulton* because it involved text messages, but the holding was broader: the court emphasized that communications are not "confidential" under § 632 where "the parties to the communication may reasonably expect that the communication may be overheard or recorded." *Boulton v. Cmty.Com, Inc.*, 2025 U.S. App. LEXIS 1819, at *4 (9th Cir. Jan. 28, 2025).

---

[1] As explained in Defendants' opening brief, numerous courts have adopted a contrary view. *Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955 at *6-7 (N.D. Cal. October 23, 2019) (quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (Cal. 2002)); *see Boulton v. Cmty.Com, Inc.*, 2025 U.S. App. LEXIS 1819 at *3-5 (9th Cir. Jan. 28, 2025); *McGinnis v. community.com, Inc.*, 2023 U.S. Dist. LEXIS 172304 at *6-8 (C.D. Cal. Sept. 25, 2023); *Hubbard v. Google LLC*, 2024 U.S. Dist. LEXIS 117876 at *21-24 (N.D. Cal. July 1, 2024).

Here, Plaintiffs communicated with publicly accessible websites that disclosed the use of tracking technologies in their privacy policies, and allegedly did so without configuring their browsers to prohibit the use of cookies/tags/pixels.

**E. Plaintiffs Fail to State a Claim Under the CDAFA.**

Plaintiffs' CDAFA claim (Cal. Penal Code § 502) requires allegations that Defendants "knowingly" accessed Plaintiffs' computers "without permission" and caused "damage or loss." The Opposition fails to adequately address the deficiencies identified in Defendants' Motion.

For reasons made obvious by Defendants' Request for Judicial Notice, Plaintiffs intentionally fail to identify the disclosures that were made to them when they accessed WebMD.com and Drugs.com. That is, they ignore that these websites disclosed to them their use of third party cookies, and ignore that this information was readily available to them before they conducted their alleged searches. Nor do Plaintiffs allege that Defendants had any reason to believe that Plaintiffs did not suspect the information that they voluntarily shared with those websites could be shared (anonymously or otherwise) with third parties.

Additionally, unjust enrichment is not "damage or loss" under the CDAFA, which requires tangible harm to the computer or data. *See Hernandez-Silva v. Instructure, Inc.*, 2025 U.S. Dist. LEXIS 153186, at *20 (C.D. Cal. August 4, 2025) (dismissing CDAFA claim because "plaintiffs did not 'articulate [their] theory of loss in a concrete way'" and "did not 'provide any allegations about how or why' the 'plaintiffs suffer[ed] an economic loss every time their data is used and shared'") (quoting *Lineberry v. Addshopper, Inc.*, 2025 U.S. Dist. LEXIS 29903, at *2 (N.D. Cal. Feb. 19, 2025)). The storage of a small text cookie file does not constitute "damage or loss" under the statute, and Plaintiffs were not damaged by any alleged collection of data that they themselves admit could not be linked to their names and was voluntarily provided to an entity they have no relationship with (*i.e.* the website publishers). (*See* Complaint at ¶ 25; Opp. at 8-9.)

**F. Plaintiffs Fail to State a Claim Under the ECPA.**

Plaintiffs' ECPA claim (18 U.S.C. § 2511) fails because the website publishers consented to the installation and operation of the Scorecard Tags and the one-party consent exception applies. As parties to the communications between users and their websites, the publishers' consent is sufficient under § 2511(2)(d).

Plaintiffs invoke the "criminal or tortious purpose" exception to one-party consent, citing *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) and *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857 (N.D. Cal. 2026). But this exception requires more than conclusory allegations of illegality—it requires specific facts demonstrating that the defendant's *purpose* in intercepting, using, or disclosing the information was to facilitate a crime or tort. *See Sussman v. Am. Broad. Co.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999); *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 U.S. Dist. LEXIS 83660, at *38 (C.D. Cal. Feb. 27, 2025) ("The requirement that the alleged criminal or tortious purpose is 'independent of the interception itself' is not met when an alleged CIPA violation serves to invoke the Crime-Tort Exception of ECPA."). Plaintiffs allege no facts suggesting that Defendants acted with a purpose that was tortious, illegal, or anything other than the ordinary commercial objective of audience measurement and advertising optimization.

**G. Plaintiffs' Common Law Claims Fail.**

Plaintiffs' invasion of privacy and intrusion upon seclusion claims require (1) a reasonable expectation of privacy, and (2) conduct that would be "highly offensive to a reasonable person." Neither element is satisfied.

Plaintiffs allege that they browsed free, publicly accessible websites with privacy and cookies policies that expressly disclosed the exact activity that the Complaint is directed towards. Plaintiffs do not allege that they created accounts, made purchases, or provided any information that could be linked back to their names, contact information, or other details from which their identities could be

learned. Under these circumstances, and in light of the legal authorities referenced above correctly acknowledging that internet browsing activity is inherently subject to sharing (*see* fn. 1), no reasonable person would expect that their browsing of public webpages was "private" or would otherwise have a *reasonable* expectation of privacy.

Plaintiffs argue that the "highly offensive" determination is a jury question, but courts routinely resolve this element at the pleading stage where the alleged conduct is a ubiquitous commercial practice. *Popa*, 153 F.4th at 791, 795 (affirming motion to dismiss because tracking of interactions with website was not "highly offensive"); *see, e.g.*, *Hubbard v. Google LLC*, 2024 U.S. Dist. LEXIS 117876, at *26 (N.D. Cal. July 1, 2024) ("Where, as here, a defendant does not employ secrecy or deception or some other 'bad act' in connection with data collection, and instead engages in ubiquitous, commercial behavior, the Court concludes, as a matter of law, that such behavior does not rise to the level of highly offensive. The Court will therefore dismiss Plaintiffs' privacy claims."). Audience measurement through cookies, tags, and similar technologies is extraordinarily common and an entire digital ecosystem has developed around this core practice. Plaintiffs do not allege that Defendants' activities depart from industry norms or standards, or that they are otherwise "highly offensive" in any other reasonable way.

**H. Plaintiffs' UCL Claim Fails.**

UCL standing requires that the plaintiff has "suffered injury in fact and lost money or property as a result of . . . unfair competition." Cal. Bus. & Prof. Code § 17204. Plaintiffs cite *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024), for the proposition that privacy harms equal lost "money or property." But *Meta Pixel* involved the disclosure of *tax return information* through a tax preparation service—an entirely different context from browsing public webpages. 724 F. Supp. 3d at 1025. Individual digital browsing data does not constitute

"property" under the UCL. *See Rodriguez v. Google LLC*, 2021 U.S. Dist. LEXIS 98074 at *29 (N.D. Cal. May 21, 2021) (rejecting argument that browsing data is "property" under UCL).

Critically, *Getz*—Plaintiffs' lead authority—*dismissed the UCL claim* for failure to allege economic injury. *Getz v. CVS*, 2:25-cv-04689, ECF No. 79, minute order granting in part and denying in part motion to dismiss (C.D. Cal. Oct. 24, 2025) at 28-29. If a plaintiff who had an account with CVS, made purchases, and had personal health information intercepted could not establish UCL standing, Plaintiffs—who had no accounts, made no purchases, and never provided personal information—cannot.

Moreover, because all of Plaintiffs' underlying statutory claims fail, the UCL's unlawful prong necessarily fails. And the unfair prong adds nothing independent—Plaintiffs identify no conduct that is "unfair" apart from the same alleged statutory violations.

## III. CONCLUSION.

For the foregoing reasons, and those set forth in the Motion, Defendants respectfully request that the Court dismiss the Complaint and the causes of action asserted therein with prejudice.

Dated: June 8, 2026

VENABLE LLP

By: */s/ Jean-Paul P. Cart*
Jean-Paul P. Cart

*Attorneys for Defendants, Comscore, Inc. and Full Circle Studies, Inc.*

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2**

The undersigned, counsel of record for Defendants Comscore, Inc. and Full Circle Studies, Inc., certifies that this brief contains 3,309 words and complies with the limit set by the Court's New Case Order dated February 11, 2026. (Dkt. 14, § 3.A.)

Dated: June 8, 2026

VENABLE LLP

By: */s/ Jean-Paul P. Cart*
Jean-Paul P. Cart

*Attorneys for Defendants, Comscore, Inc. and Full Circle Studies, Inc.*